## THE MISSOURI PACIFIC RAILWAY COMPANY V. A. N. NEVIN.

1. CORN *for Seed; Evidence of its Purpose, Competent.* Plaintiff shipped a car-load of ear corn over the road of defendant. The petition alleged that it was carefully selected for its peculiar value as seed corn, and that while in transportation the defendant, without the knowledge or consent of plaintiff, caused it to be run through an elevator and shelled, thus materially diminishing its value. *Held,* That it was not error to permit plaintiff to introduce testimony that he notified defendant before shipment that the corn was selected for seed purposes, and this notwithstanding there was no allegation in the petition of such notice.

2. —————— *Competent Testimony.* Where witnesses testify as to the value of ear corn for seed purposes, it is not error to permit them to testify why shelled corn is of less value, even if in so testifying they state the reasons farmers give for refusing to purchase shelled corn for such purposes.

### Error from Atchison District Court.

ACTION by *Nevin* against *The Railway Company,* to recover $373.85, and interest thereon from March 17, 1883, as damages for a breach of contract in failing to deliver certain corn in the ear to the consignee, Samuel Emmons, at Gibson City, Illinois. Trial at the June Term, 1883, and verdict for plaintiff for $383.12. New trial denied, and judgment on the verdict for plaintiff. The defendant brings the case to this court. The opinion states the facts.

*Everest & Waggener,* for plaintiff in error.

*Smith & Solomon,* for defendant in error.

The opinion of the court was delivered by

BREWER, J.: Plaintiff shipped a car-load of ear corn over the road of the defendant, from Shannon, Kansas, to Gibson, Illinois. When the corn reached Atchison, defendant, without the knowledge or consent of plaintiff, caused the corn to be run through an elevator and shelled. The plaintiff had caused this corn to be carefully selected, and was shipping it to an agent in Illinois, to be there sold for seed purposes. The

25—31 KAS.

shelling of the corn materially injured its value for such purposes, and he brought this action in consequence, to recover damages therefor.

Only two questions need to be considered. The bill of lading stated that it was ear corn, which was to be received and to be transported. The petition alleged that it had been carefully selected, and was of peculiar value for seed purposes. It did not specifically allege that plaintiff had notified the defendant of the object for which the corn had been selected and was shipped. On the trial, over the objection of the defendant, he was permitted to show that he notified the defendant's agent at Shannon, before the shipment, that he was selecting and shipping it for seed purposes, and also that while the corn was at Atchison, by his son he notified the company's proper officers there that it was for seed purposes, and was not under any circumstances to be shelled. Of this defendant complains, claiming that the ordinary rule of damage is the difference between the value of a car-load of ear and one of shelled corn; and that if any special damages are to be recovered by reason of the special purpose for which the corn was designed and selected, it should have been notified in advance of such purpose, and if notice is necessary an allegation of notice is also necessary. It is sought to bring this within the rule which obtains where an article is ordered from a manufactory to be manufactured for a special purpose. We think the objection not well taken. The rule of damage would be the difference between the value of this car-load of corn, of the kind and quality it was, and in the condition it was, for any purpose for which such a car-load of corn might ordinarily be expected to be used, and the value of that carload of corn in the condition in which it was delivered, for any uses to which it could ordinarily be put. If such a carload of corn, of that quality and kind and in the ear, was worth $1.25 per bushel in Illinois, by reason of its being specially fit for seed purposes, then that was the amount which he was entitled to receive as the proceeds of that corn, if properly transported by the defendant.

It cannot be said that the use of corn for seed purposes is so out of the ordinary and usual purposes for which corn is shipped, that the defendant was entitled to special notice of such purpose.  This corn, being of better quality and more carefully selected than ordinary loads of corn, and being obviously such as shown by the testimony, was of higher value; and whatever was its value for any purpose for which corn is ordinarily used, belonged to the plaintiff, and of it he could not be deprived by any wrongful act of the defendant.  The defendant had no right to assume that it was intended merely for feeding stock or any use to which corn of inferior quality may be put.  Being obviously of a higher grade, it was reasonably to be presumed that it was intended for some other and more important use.  Further, it is evident that the defendant was in no way misled at the time of the trial as to the purposes for which this corn was bought and shipped; for the fact was expressly alleged in the petition, and the depositions of witnesses in Illinois on file before the trial also fully disclosed it.

The other question is this: Witnesses in Illinois testified by deposition to the value of corn in the ear for seed purposes, placing it much higher than that of shelled corn.  Being asked the reason of the difference, they stated substantially that farmers would not buy shelled corn for seed; and further asked why this was, testified that the farmers' objections were that they could not examine the shelled corn so easily, and that the kernels were apt to be cracked and broken.  We see nothing in this testimony which is open to just objection.  Having testified to a large difference between the value of ear and shelled corn, it was but right that the reasons for such difference should be given; and notwithstanding these reasons were substantially only the statements of farmers, yet they do not partake of the nature of hearsay, for the statements themselves were evidential facts.  While the difference between the value of ear corn and shelled corn as testified to by the witnesses seems very large, and consequently the amount of the verdict also large, yet the testimony was all one way, and

fully justified, if it did not compel, the verdict. The defendant offered no testimony, leaving the question of damages, as well as its liability, to rest upon the plaintiff's evidence.

We see nothing else that requires notice, and the judgment will be affirmed.

All the Justices concurring.